UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY L. BROWN,

        Plaintiff,

vs.

Case No. 1:04-CV-350

Hon. Gordon J. Quist

JOHN E. POTTER,
POSTMASTER GENERAL,

        Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff, proceeding *pro se*, has filed a suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* This statute prohibits discrimination on the basis of race, color, religion, sex, or national origin in federal and private employment. *See* 42 U.S.C. § 2000e, 2000e-2. This matter is now before the court on defendant's motion for summary judgment (docket no. 37) and supplemental motion for summary judgment (docket no. 43). Plaintiff has not responded to either motion. The court will dispose of these motions without oral argument. W.D. Mich. LCivR 7.2(d). For the reasons stated below, the court recommends that defendant's motions be granted.

**I.     Background**

In his complaint, plaintiff alleges that he was employed as a maintenance mechanic at the United States Post Office in Holland, MI. Compl. at ¶¶ 5, 7. Plaintiff alleges that he was the victim of sex discrimination as follows:

> In August 2000 I (Danny L. Brown a male employee) was given a 14 day suspension for using a postal vehicle for personal business. In May 2001 Renee DeBeck (a female employee) was given a 7 day suspension for the same offense. Holland Post Office Management also tried to terminate my employment at the time of my offense.

Compl. at ¶ 7. In an EEOC decision dated October 2, 2003, an Administrative Judge found that plaintiff failed to establish a prima facie case of sex discrimination. EEOC Decision (10/2/03), attached to Wolfgang Grundner Declaration (docket no. 40). The EEOC affirmed the decision on administrative appeal on February 27, 2004. EEOC Decision (2/27/04), attached to Compl.

Plaintiff filed the present suit after receiving the unfavorable EEOC decision. Plaintiff's suit seeks monetary and equitable relief. However, the court struck plaintiff's prayer for damages as set forth in his complaint and denied his motion for compensatory damages because he did not seek these remedies in the administrative proceedings. *See* Order (8/30/05). As a result of these rulings, plaintiff's remaining remedy is for equitable relief.[1]

**II.    Legal standards**

**A.    Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

---

[1] Plaintiff proposed the following remedy in his EEO Complaint. "Managers in Holland need training in fair & equal treatment of employees. I want my suspension removed from all files (O.P.F. & unofficial files in Holland). I feel this is just compensation for my unequal treatment." EEO Complaint at ¶ 17, attached to Compl.

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Employment discrimination

Plaintiff alleges employment discrimination based upon a theory of disparate treatment. In such cases, the Sixth Circuit utilizes a burden-shifting analysis as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719, 731 (6th Cir. 2000); *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). To establish a prima facie case of discrimination, plaintiff must demonstrate: (1) that he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that he was treated differently from similarly situated members of the unprotected class. *Hoskins*, 227 F.3d at 731; *Mitchell*, 964 F.2d at 582; *Alexander v. Local 496, Laborers' International Union*, 177 F.3d 394, 402-03 (6th Cir. 1999).

### III. Discussion

The issue before the court is whether plaintiff has established a prima facie case of employment discrimination. In his first motion for summary judgment, defendant contends that plaintiff failed to establish that he suffered an adverse employment action. In the supplemental

3

motion for summary judgment, defendant contends that plaintiff failed to demonstrate that he was treated differently from a similarly situated female employee.

### A. Adverse employment action

The adverse employment action requirement is designed to filter out discrimination suits resulting in *de minimis* employment actions that "merely inconvenience" the plaintiff or cause a "bruised ego." *Plautz v. Potter*, No. 04-6105, 2005 WL 3479840 at *5 (6th Cir. Dec. 21, 2005); *White v. Burlington Northern & Santa Fe. R.*, 364 F.3d 789, 795-803 (6th Cir. 2004) (*en banc*), *cert. granted* 126 S. Ct. 797 (Dec. 5, 2005); *Bowman v. Shawnee State University*, 220 F.3d 456, 462 (6th Cir. 2000). A plaintiff claiming employment discrimination must show that he suffered a materially adverse change in the terms of his employment, which "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Management Inc.*, 97 F.3d 876, 885-86 (6th Cir. 1996), *quoting Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.1999), *quoting Crady*, 993 F.2d at 136.

Plaintiff has not disputed the following facts. On August 4, 2000, a postal inspector videotaped plaintiff using a postal vehicle for personal business while he was on duty. Malcolm Miller Declaration at ¶ 3 (docket no. 39). Plaintiff was placed on paid administrative leave from August 10, 2000 through August 29, 2000 (14 days) while his supervisor (Mr. Miller) investigated the incident. Miller Decl. at ¶ 4. Mr. Miller interviewed plaintiff, reviewed the postal inspector's

investigative memorandum, and at the close of his investigation recommended that plaintiff's employment be terminated. *Id.* at ¶ 5. Despite this initial recommendation, plaintiff's employment was not terminated. *Id.* at ¶ 6. Rather, he was suspended for 14 days. *Id.* Accordingly, Mr. Miller issued plaintiff a notice of a 14-day suspension for using a postal vehicle for personal business while on duty status. *Id.* at ¶ 7. Pursuant to a grievance settlement, plaintiff's 14-day suspension was changed to a "working" suspension, meaning that the employee reports to work each day during his period of suspension and receives his full pay. *Id.* at ¶ 8. Finally, plaintiff reported to work each day of his suspension and received his full pay. *Id.*

Viewing the record in the light most favorable to plaintiff, the court concludes that he did not suffer an adverse employment action. Plaintiff's 14-day paid "working" suspension did not constitute a significant change in his employment status: his employment was not terminated, he was not demoted and he had no decrease in wage or salary. *See, e.g., Plautz*, 2005 WL 3479840 at *5 (temporary loss of one day's pay, which was later reinstated, is not adverse employment action); *Bowman*, 220 F.3d at 461-62 (no adverse employment action by university where Coordinator of Sports Studies was removed for 10 days, maintained his position as full-time instructor and lost no income); *Jackson v. City of Columbus*, 194 F.3d 737, 744, 752 (6th Cir. 1999) (police chief's paid four-day suspension did not constitute an adverse employment action). Plaintiff's situation can be contrasted with the Sixth Circuit's recent decision in *White*, which involved a 37-day suspension without pay. *White*, 364 F.3d at 801-02. Even though the employer later gave the plaintiff back pay, the court held that the 37-day suspension constituted an

adverse employment action, noting that "[t]aking away an employee's paycheck for over a month is not trivial." *Id.* No such taking or lengthy suspension occurred in the present case.[2]

### B. Plaintiff was not treated differently from a similarly situated employee

Next, plaintiff failed to demonstrate that he was treated differently from a similarly situated female employee. "In order for two or more employees to be considered similarly-situated for the purpose of creating an inference of disparate treatment in a Title VII case, the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the female employees who he alleges were treated more favorably." *Pierce v. Commonwealth Life Insurance Company*, 40 F.3d 796, 802 (6th Cir. 1994). As the Sixth Circuit stated in *Mitchell*:

> [T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583 (citation omitted).

As the court previously discussed, plaintiff was employed as a maintenance mechanic. At 5:50 a.m. on August 4, 2000, the postal inspector observed building supplies loaded in a postal pickup truck in the Holland Post Office parking lot. Postal Inspector Investigative Memorandum attached to Malcolm Miller Supp. Decl. as Exh. 1 (docket no. 47). The inspector observed plaintiff

---

[2] Plaintiff stated in his interrogatory answers that his work hours changed after his suspension. Prior to his suspension, plaintiff worked from 7:00 a.m. to 3:30 p.m. on Monday through Friday. *See* Plaintiff's interrogatory answers, attached to defendant's brief as Exh. 2. After his suspension, plaintiff worked from 7:00 a.m. to 4:00 p.m. *Id.* However, plaintiff's complaint does not claim that the change in work schedule is related to the alleged discrimination. In addition, plaintiff failed to exhaust this claim because he did not raise it in the administrative proceedings. Even if the court were to consider this issue, the minor change in plaintiff's schedule is only a *de minimis* employment action that cannot serve as the basis for his discrimination claim. *See, generally, Plautz*, 2005 WL 3479840 at *5; *Bowman*, 220 F.3d at 461-62; *Jackson*, 194 F.3d at 752; *Hollins*, 188 F.3d at 662; *Kocsis*, 97 F.3d at 886.

removing materials from the truck and then driving it out of the parking lot at 7:50 a.m., delivering materials to a private residence. *Id.* When the inspector returned to the post office at 8:53 a.m., the truck had not yet been returned. *Id.* The inspector reported that plaintiff originally stated that he delivered materials to his residence with the truck, but later stated that he also drove to a mobile home park to change a lock. *Id.*

Plaintiff met with the inspector on August 8, 2000 for an interview. *Id.* At that time, plaintiff confirmed that he drove a postal vehicle to his residence to deliver shelving material and that he used the vehicle to obtain building supplies for himself while picking up supplies for the post office at Haworth, Inc. *Id.* Plaintiff confirmed that he was not authorized to drive the vehicle to his residence, that he frequently drove postal vehicles to his residence while on the clock, without authorization, to pick up tools for his maintenance work at the post office. *Id.* At the interview, the inspector showed plaintiff the August 4th surveillance tape depicting him at his residence between approximately 8:10 a.m. and 8:35 a.m. *Id.* Plaintiff declined to provide a sworn written statement during the interview. *Id.*

The other employee, Renee DeBeck, was disciplined for an action that occurred on May 2, 2001. Malcolm Miller Supplemental Declaration (docket no. 47). Ms. DeBeck was employed as a part-time, flexible distribution clerk, and was an acting supervisor on the date of her infraction. *Id.* at ¶ 2. Her offense consisted of asking another employee to drive her to her vehicle, which was parked a few miles away. *Id.* at ¶ 3. Mr. Miller subsequently suspended Ms. DeBeck for seven days for using a postal vehicle for unofficial business. *Id.* at ¶ 4. Mr. Miller noted that unlike plaintiff, Ms. DeBeck was not "on the clock" when she used the vehicle for personal business. *Id.* at ¶ 5. Mr. Miller considered this distinction an important mitigating circumstance that made her

offense different from that committed by plaintiff. *Id.* In addition, plaintiff admitted to a postal inspector that he had committed the same or similar act on prior occasions. *Id.* Mr. Miller was not aware of any prior incident of inappropriate use of a postal vehicle by Ms. DeBeck. *Id.*

Based upon this record, plaintiff was not similarly situated with Ms. DeBeck. Plaintiff was employed as a maintenance mechanic at the time of his infraction, while Ms. DeBeck was employed as a part-time, flexible distribution clerk and acting supervisor at the time of her infraction. Plaintiff used the postal vehicle when he was clocked in, while Ms. DeBeck used the vehicle on her lunch hour. Plaintiff admitted to previous use of postal vehicles for personal business, while Ms. DeBeck had no such record. In addition, the court notes that plaintiff made inconsistent statements to the postal inspector, while there is no record of such conduct by Ms. DeBeck. Other than being supervised by Mr. Miller, plaintiff has failed to show "that all of the relevant aspects of his employment situation are nearly identical" to that of Ms. DeBeck. *See Pierce*, 40 F.3d at 802. Accordingly, plaintiff has failed to show that Ms. DeBeck was a similarly situated employee.

### III.     Recommendation

Plaintiff has failed to present a prima facie claim of discrimination. Accordingly, I respectfully recommend that defendant's motion for summary judgment (docket no. 37) and his supplemental motion for summary judgment (docket no. 43) be **GRANTED**.

Dated:  February 13, 2006              /s/ Hugh W. Brenneman, Jr.
                                       Hugh W. Brenneman, Jr.
                                       United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).